UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Marlon Triplett,

        Petitioner,

    vs.                      REPORT AND RECOMMENDATION

Dwight L. Fondren, Warden,

        Respondent.        Civ. No. 07-2343 (JRT/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I.  Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon a Petition for a Writ of Habeas Corpus, which challenges the duration of his sentence.  See, Title 28 U.S.C. §2241.

The Petitioner Marlon Triplett ("Triplett") appears pro se, and the Respondent Dwight L. Fondren appears by Richard A. Newberry, Assistant United States Attorney.

For reasons which follow, we recommend that the Petition for a Writ of Habeas Corpus be denied.

II.  Facts and Procedural Background

Triplett is a Federal prisoner, who is currently serving a 180-month sentence at the Federal Correctional Institution, in Milan, Michigan ("FCI-Milan").  The sentence resulted from Triplett's conviction, in the United States District Court for the Eastern District of Wisconsin, for Conspiracy to Possess in Excess of Five (5) Kilograms of Cocaine, with Intent to Distribute, in violation of Title 21 U.S.C. §§841(a)(1) and 846.  See, Declaration of Angela Buege ("Buege Decl."), Docket No. 5, at ¶3, and Attachments A and B.

As to the facts which underlie Triplett's Petition for Habeas relief, on May 15, 2005, while Triplett was incarcerated at the Federal Prison Camp, in Duluth, Minnesota ("FPC-Duluth"), he was found to be in the possession of intoxicants, in violation of the Federal Bureau of Prisons ("BOP") Regulations, Code 222 of 28 C.F.R. §541.13.  See, Buege Decl., supra at ¶9, n. 1, and Attachment D, at unnumbered page 1.  On June 1, 2005, Triplett pled guilty to the charge, and was disciplined with the forfeiture of 27 days of Good Time Credit, the loss of commissary privileges for 90 days, and the impoundment of his personal property for 90 days. Id.; Petition, Docket No. 1, at 2.

- 2 -

Less than one (1) week later, on June 5, 2005, Officer Kalen Johnson ("Johnson") performed a routine search of Triplett's locker, and found a pen. Id. at ¶6, Attachment C, at unnumbered page 1, Exhibit F, at unnumbered page 5. Johnson found a residue on the inner barrel of the pen, which smelled like marijuana. Id., Attachment C, at unnumbered page 1. Accordingly, Johnson submitted the pen to Steve Akervik ("Akervik"), who is a BOP Special Investigative Supervisor Technician, for testing. Id., Attachment C, at unnumbered page 1, and Attachment F, at unnumbered page 8. Akervik tested the pen with a Narcotic Identification System Testing Kit (a "NIK test"), which yielded positive results for the presence of marijuana.[1] Id., Attachment F, at unnumbered page 8.[2]

Triplett was then charged with a violation of BOP Regulations, Code 113 of 28 C.F.R. §541.13, which prohibits the "[p]ossession of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by the medical staff." Id. at

---

[1]Buege avers that Akervik is certified to administer NIK tests. See, Buege Decl., supra at ¶13, Attachment F, at unnumbered page 8.

[2]The BOP's Chain of Custody Log states that the NIK test results "indicate **possible** marijuana." See, Buege Decl., Attachment F, at unnumbered page 5 [emphasis added]. However, Akervik, who performed the NIK test, stated in his report that the NIK test was positive for marijuana, without any such qualification. Id., Attachment F, at unnumbered page 8.

¶6.  In a subsequent incident report, Triplett responded to the charges, and explained

that, after his property was impounded on June 1, 2005, he no longer had any pens or

other writing instruments.  Id. at ¶7, Attachment C, at unnumbered pages 1-2; Petition,

supra at 2.  Accordingly, when Triplett needed to fill out a visitation form, he found

the pen, which contained the marijuana residue, in the television room.  Id. at ¶7,

Attachment C, at unnumbered page 2; Petition, supra at 2.  He then decided to keep

the pen, and he placed it in his locker.  Id.; Petition, supra at 2.  As a consequence,

Triplett admitted his possession of the pen, but denied any knowledge that the pen

contained marijuana residue.  Id.; Petition, supra at 2.

       According to the Respondent, on June 10, 2005, an informal Hearing on the

charges was held before a Unit Discipline Committee ("UDC").  Id. at ¶9; see also,

28 C.F.R. §541.15.  The UDC referred the violation to a Discipline Hearing Officer

("DHO") for a formal Hearing.[3]  Id.; see also, 28 C.F.R. §541.16.  Triplett received

written notice of the formal Hearing, which advised him of his right to appear, his

---

[3]According to the Respondent, the UDC conducts an initial Hearing after an
investigation of misconduct, and "can expunge a minor, non-repetitive incident report,
determine the inmate committed the prohibited act and impose minor sanctions, or
refer the matter to the DHO for further review/action."  Respondent's Memorandum
in Opposition, Docket No. 4, at 5, citing 28 C.F.R. §541.15.

right to present evidence, and his right to have staff assistance. <u>Id.</u> at ¶10, Attachment E.

On July 6, 2005, Triplett appeared before the DHO.[4]  <u>Id.</u> at ¶11.  He was advised of his rights, and he waived his right to a staff representative. <u>Id.</u>, Attachment E, at unnumbered page 2, and Attachment F, at unnumbered page 1.  Triplett did not call any witnesses, nor did he present any written evidence. <u>Id.</u>  Triplett admitted that he possessed the pen, which contained the marijuana residue, but he argued that, given the impoundment of his personal property on June 1, 2005, and the negative test results from a urine sample, which he provided after the pen was confiscated, he could not have personally used the pen to smoke marijuana. <u>Id.</u>, Attachment F, at unnumbered page 1; <u>Petition</u>, supra at 3.

On July 8, 2005, notwithstanding Triplett's explanation, the DHO found him guilty of violating Code 113, because he "admitted possessing the contraband * * * and the evidence presented clearly identifies [Triplett] possessing an illegal substance in [his] secured and assigned locker." <u>Id.</u>, Attachment F, at unnumbered page 2.  The

---

[4]According to the Respondent, the DHO is a "one-person, independent discipline hearing officer who is responsible for conducting institution discipline hearings and who imposes appropriate sanctions for incidents of inmate misconduct." <u>Respondent's Memorandum in Opposition</u>, supra at 6 n. 2, citing <u>28 C.F.R. §541.16</u>.

DHO sanctioned Triplett by the disallowance of 27 days of Good Time Credit, the forfeiture of 13 days of non-vested Good Time Credit, a sentence of 45 days in disciplinary segregation, the loss of telephone privileges for 180 days, and the loss of visitation privileges for 365 days. Id. The DHO also recommended a disciplinary transfer to another BOP facility which was "better equipped to monitor this type of current inappropriate behavior." Id. Triplett appealed the DHO's decision, through the BOP's administrative remedy program, but his claims were rejected. Id. at ¶¶17-20, Attachment G; Petition, supra, Exhibit B, at unnumbered page 2. The Respondent acknowledges that Triplett has fully exhausted his administrative remedies. Id. at ¶20.

In his Federal Petition, which he filed on May 18, 2007, Triplett asserts that his Code 113 conviction should be vacated, and his lost Good Time Credit should be restored, because, he contends, "there [was] insufficient evidence to convict [him] of violating code #113." See, Petition, supra at 1. Triplett acknowledges that the DHO could have concluded "that a person who is discovered to be in the possession of drug paraphernalia is the person who is consuming the contraband in question," and he further acknowledges that, "absent evidence to the contrary it would be appropriate to find [the inmate] guilty of possessing drug paraphernalia." Id. at 4. However, Triplett argues that his conviction was inappropriate, because "there is concrete

evidence proving that [he] was **not** the individual that smoked marijuana using the pen in question" -- i.e., the fact that Triplett could not have possessed the pen prior to June 1, 2005, when his other property was impounded, and the negative results of his urine test, after the pen was discovered in his locker.  Id. at 3-4 [emphasis in original]. Moreover, Triplett contends that "there is no other evidence that [he] possessed marijuana, such as information from a confidential informant or a positive urine test." Id. at 3.

For his part, the Respondent contends that Triplett was properly convicted pursuant to the "some evidence" standard.  See, Respondent's Memorandum in Opposition, Docket No. 4, at 10.  The Respondent asserts that the DHO had sufficient evidence to convict Triplett, given Triplett's admission that he possessed the pen, and since the pen tested positive for marijuana.  Id. at 8.  In addition, the Respondent argues that Triplett's claim, that he did not know the pen contained marijuana, "is refuted by the staff member's statement in the incident report that he detected an odor from the pen similar to marijuana."  Id. at 7.

In response, Triplett contends that Johnson "did not detect an odor similar to marijuana until after he had 'disassembled the pen and observed a residue in the pen barrel.'"  Petitioner's Reply,  Docket No. 8, at 2, quoting Buege Decl., Attachment C.

Accordingly, Triplett argues that there is no evidence that he disassembled the pen, and therefore, there was "no basis for the Government to allege that [he] must have known the pen contained marijuana residue[.]" <u>Id.</u>  In addition, Triplett asserts that the "some evidence" standard was improperly applied, and that the DHO was required to apply a preponderance of the evidence, in view of the "conflicting evidence" which concerned his violation of Code 113. <u>Id.</u> at 3.

We address the parties' arguments in turn.

### III.  <u>Discussion</u>

A.    <u>Standard of Review</u>.   The Fifth Amendment prohibits the Federal Government from depriving a person of life, liberty, or property, without due process of law.  While it is true that the constitutional protections, which are encompassed by the Due Process Clause, do not abate at the time of imprisonment, see, <u>Hudson v. Palmer</u>, 468 U.S. 517, 539 (1984)(O'Connor, J., concurring), it is also true that "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." <u>Sandin v. Conner</u>, 515 U.S. 472, 485 (1995), quoting <u>Jones v. North Carolina Prisoners' Labor Union, Inc.</u>, 433 U.S. 119, 125 (1977), quoting in turn, <u>Price v. Johnston</u>, 334 U.S. 266, 285 (1948).

Although prison disciplinary proceedings often implicate liberty interests, they are not criminal Trials, and therefore, they do not involve the full panoply of procedural and substantive protections that are available in criminal proceedings.  See, <u>Wolff v. McDonnell</u>, 418 U.S. 539, 567-68 (1974).  Nevertheless, in <u>Wolff</u>, the Supreme Court enumerated the minimum due process requirements of a prison disciplinary proceeding as follows:

>  1.      Written notice of the claimed violation must be given to the prisoner at least 24 hours prior to the Hearing;
>
>  2.      A written statement must be compiled by the factfinder describing the evidence relied upon and the reasons for the findings and disciplinary action;
>
>  3.      The prisoner should be permitted to call witnesses and to present evidence in defense of the charges, unless doing so would jeopardize institutional safety or correctional goals; and
>
>  4.      Where the inmate is illiterate, or the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid

> of a fellow inmate, or have adequate substitute aid in the
> form of help from the staff or from a sufficiently competent
> inmate designated by the staff.

<u>Id</u>. at 563-70.

Beyond these procedural due process considerations, the Supreme Court has determined that, in order to comply with constitutional due process, at least "some evidence" must support the finding of a disciplinary sanction.  See, <u>Superintendent v. Hill</u>, 472 U.S. 445, 455 (1985).  As explained by the Court:

> This standard is met if there is some evidence from which
> the conclusion of the administrative tribunal could be
> deduced. * * * Ascertaining whether this standard is
> satisfied does not require examination of the entire record,
> independent assessment of the credibility of witnesses, or
> weighing of the evidence.  Instead, the relevant question is
> whether there is any evidence in the record that could
> support the conclusion reached by the disciplinary board.

<u>Id</u>. at 455; see also, <u>Louis v. Department of Correctional Services of Nebraska</u>, 437 F.3d 697, 700 (8th Cir. 2006).

Given these legal precepts, we turn to an analysis of Triplett's grievance.

      B.   <u>Legal Analysis</u>.  After reviewing the Record, we find that Triplett was provided adequate procedural due process protections, which fully complied with the requisites of <u>Wolff</u>.  First, he was given written notice of the charge, in the form of an incident report, on June 8, 2005, well in advance of 24 hours prior to his appearance before the DHO on July 6, 2005.  See, <u>Buege Decl.</u>, supra at ¶7, Attachment C.

Second, as required, the factfinder provided Triplett with a written statement describing the evidence relied upon, and the reasons for the findings, and the disciplinary action.  Id. at ¶16, Attachment F.  Finally, Triplett was informed of his rights to be represented by a staff member, to call witnesses, and to introduce evidence at the Hearing, and he waived those rights.  Id. at ¶¶10-11, Attachment E.

Moreover, after reviewing the evidence which was presented at  the Hearing, it is also clear that there was "some evidence" to conclude that Triplett was guilty of the offense charged.  Triplett argues that he was wrongfully found to have violated Code 113 because, he urges, he did not know the pen contained marijuana, and because that circumstance, when coupled with his negative urinalysis, exonerates him of any showing that he employed the pen to smoke marijuana. See, Petition, supra at 4-5.  However, Triplett was not charged, nor convicted, of **using** marijuana, which is a distinct violation of the BOP regulations, under Code 112 of 28 C.F.R. §541.13.  Instead, he was convicted of **possessing** marijuana, and related paraphernalia, which was not prescribed by medical staff, in violation of Code 113.  Triplett admitted that he possessed the pen in question, and that admission was sufficient evidence for the DHO to conclude that Triplett was guilty of the offense of which he was charged.

In addition, Triplett appears to argue that he could not be found guilty of violating Code 113 unless there was evidence which showed that he knowingly possessed marijuana, or related paraphernalia.  See, <u>Petition</u>, supra at 5 ("[Triplett] is a victim of unknowingly picking up a pen that some unknown person or persons used to smoke marijuana[.]").   However, Code 113 does not include any scienter requirement, and therefore, Triplett's argument is misplaced.  As noted by the Respondent, the circumstances here are closely analogous to the facts of <u>Cabrera v. Veach</u>, 2006 WL 2547985 (C.D. Ill., August 31, 2006).   In <u>Cabrera</u>, a BOP correctional officer conducted a "routine search of the cell that was occupied by Cabrera and another inmate," and found a pen that "smelled strongly of marijuana." <u>Id.</u> at *1.  The pen tested positive for cannabinoids, and Cabrera was charged with a Code 113 violation.  <u>Id.</u>  Cabrera also submitted to a urinalysis, the results of which were negative for marijuana use.  At his Hearing before the DHO, Cabrera made the following statement:

> I grabbed the pen and took it in to the cell.  I had it in my locker.  I have about 20 of them [sic] pens in there.  I didn't know there was anything on the pen or that it was used for anything.  I didn't smoke out of it.

<u>Id.</u>

Nonetheless, the DHO found Cabrera guilty of violating Code 113, and sanctioned him, in part, with the loss of 40 days of Good Time Credit.  <u>Id.</u>  In reaching his decision, as was the case here, the DHO relied upon "the reporting officer's statements as to finding the pen, the fact that the pen smelled of marijuana, the pen contained a residue that tested positive for cannabinoids, and the contents of the locker were identified as belonging to Cabrera[.]"  <u>Id.</u>

Cabrera later filed a Petition for a Writ of Habeas Corpus, pursuant to Title 28 U.S.C. §2241, in which he claimed that he was "actually innocent" of the charged violation.  <u>Id.</u> at *2.  The District Court denied Cabrera's Petition, after finding that there was some evidence to support the DHO's decision -- in particular, Cabrera's admission that he had the pen in his possession.  <u>Id.</u> at *4.  In addition, the Court observed that, "[c]ontrary to Cabrera's assertion, the fact that he passed a urinalysis exam does not prove that he is innocent of possession of narcotic paraphernalia."  <u>Id.</u>

We recognize, of course, that <u>Cabrera</u> is not binding legal authority in this District.  However, given that the circumstances there so closely mirror the facts at issue here, we find that Court's reasoning persuasive.  Accordingly, we conclude that Triplett was not denied due process of the law, with respect to the DHO's finding that some evidence supported his conviction.  Indeed, in his reply Memorandum, Triplett

concedes that there was "some evidence" to support his conviction. See, Petitioner's Reply, supra at 3.

Instead, Triplett contends that the DHO applied the wrong burden of proof -- in other words, Triplett argues that he could only be convicted by a preponderance of the evidence, rather than the lesser standard of some evidence. Id. at 3. Triplett argues that inmates are entitled to the preponderance standard when there is "conflicting evidence" as to the charged violation. Id., citing Goff v. Dailey, 991 F.2d 1437, 1441 n. 9 (8th Cir. 1993), cert. denied, 510 U.S. 997 (1993)(observing that, under the BOP's regulations, "inmates are not entitled to a preponderance standard unless there is conflicting evidence."); see also, 28 C.F.R. §541.17(f)("The decision of the DHO shall be based on at least some facts, and if there is conflicting evidence, it must be based on the greater weight of the evidence.").

Here, Triplett asserts that there was conflicting evidence as to whether he used the pen to smoke marijuana, since he possessed the pen only after June 1, 2005, and since he passed a urinalysis test after the pen was found in his possession.[5] Id. at 4.

_____

[5]Triplett also argues that there is conflicting evidence as to whether the pen tested positive for the presence of marijuana, based upon a statement in the Chain of Custody Log, which reads, "[NIK] Test result shows * * * possible marijuana." See, Petitioner's Reply, supra at 4; see also, Buege Decl., supra, Attachment F, at unnumbered page 5. However, Triplett's allegation is squarely rebutted by Akervik,

As a result, Triplett contends that the DHO's decision was not "based on the greater weight of the evidence," as required by 28 C.F.R. §541.17(f).

We find Triplett's arguments to be without merit.  First, in considering Triplett's Habeas Petition, our role is not to consider whether the DHO correctly applied the BOP's internal regulations -- instead, we look only to determine whether Triplett has been deprived of his due process rights.  See, <u>Goff v. Dailey</u>, supra at 1440 n. 5 ("[F]ederal courts do not sit in appellate review over * * * prison disciplinary decisions," but "sits to decide whether the disciplinary committee violated the inmate's due process rights.").

Second, we reject Triplett's contention that there was any conflicting evidence with respect to the charged violation.  As we have noted, Triplett admitted his possession of the pen in question, and he was not charged with any other violation than the possession of marijuana.  Triplett's possession of the pen that contained the marijuana was not disputed in any way, by either the facts surrounding the impoundment of his personal property, or the negative results of his urinalysis.

---

who actually performed the NIK test, and who stated, in his memorandum, that the pen had tested positive for the presence of marijuana.  See, <u>Buege Decl.</u>, supra, Attachment F, at unnumbered page 8.  Accordingly, we find that the DHO had ample evidence to conclude that the pen contained residue of marijuana.

Therefore, given the absence of any conflicting evidence that was related to the offense at issue, we find no basis for Triplett's assertion, that a higher evidentiary standard of proof was required of the Respondent. Moreover, even if a preponderance of the evidence were required, Triplett's admission that he possessed the pen would satisfy that standard of proof.

In sum, Triplett's due process arguments plainly fail, as he was provided every procedural protection required by <u>Wolff</u>. Moreover, his contention that he did not violate Code 113 is undermined by his admission that he possessed the pen in question, and we therefore find no error in the DHO's decision. Having found no merit in Triplett's arguments, we recommend that his Petition be denied.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Petition for a Writ of Habeas Corpus [Docket No. 1] be denied.

Dated:  March 19, 2008                    s/Raymond L. Erickson
                                          Raymond L. Erickson
                                          CHIEF U.S. MAGISTRATE JUDGE

NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than April 4, 2008,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than April 4, 2008,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.